UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. _____

23cr 320 ECT/DJF

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. JOHN CHARLES KOTTEN,
2. JUSTIN TYME JOHNSON,
3. SOE NYE MOO, a/k/a JACKSON, and
4. JAMES DILLON JENSEN

Defendants.

**INDICTMENT**

18 U.S.C. § 371
18 U.S.C. § 922(o)(1)
18 U.S.C. § 924(a)(2)
18 U.S.C. § 1014
18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1956(h)
18 U.S.C. § 1957(a)
18 U.S.C. § 2314
26 U.S.C. § 5845(b)

THE UNITED STATES GRAND JURY CHARGES THAT:

### COUNT 1
### (Conspiracy To Transport Stolen Property Interstate)
### (KOTTEN, JOHNSON, MOO, and JENSEN)

**A.    Introduction**

At times relevant to the indictment:

1.    From in or around May 2020 through October 2022, Defendants JOHN

CHARLES KOTTEN, JUSTIN TYME JOHNSON, SOE NYE MOO a/k/a Jackson, and

JAMES DILLON JENSEN a/k/a Dillon, and others known and unknown to the grand jury,

knowingly participated in a lucrative scheme in which they acquired stolen catalytic

converters and transported them across state lines to buyers who paid large sums of money

for the stolen car parts.



SCANNED
OCT 18 2023
U.S. DISTRICT COURT MPLS

2.    Catalytic converters are emission control devices that filter out toxic gases and pollutants from car exhaust. Catalytic converters are a critical part of a vehicle's exhaust system. They are also a required component for all combustion engine automobiles as regulated by the Environmental Protection Agency ("EPA") in the United States. The theft of a vehicle's catalytic converter results in damage that can render the vehicle inoperable until the catalytic converter is properly replaced.  In addition, vehicles from which a catalytic converter has been removed cannot legally be operated until repaired under EPA regulations.

3.    Catalytic converters, sometimes referred to as "cats," use precious metals in their center or "core" to reduce the toxic gas and pollutants from a vehicle's engine and filter them into safer emissions. Catalytic converters are designed to last the life of a vehicle without needing replacement.

4.    Thieves steal catalytic converters from vehicles for the precious metals— including palladium, platinum, and rhodium—contained in the cores. Catalytic converters are often stolen from the underside of vehicles by using handheld power tools. An experienced thief can steal a catalytic converter within a few minutes or less. Catalytic converters often lack unique serial numbers, VIN information, or other distinctive identifiers that tie them to a specific car, making them difficult to trace to a lawful owner if stolen.

5.    During the time frame of the conspiracy, catalytic converter thieves, also known as "cutters," became well informed about which vehicle makes and models contain the most precious metals in their catalytic converters. In recent years, thieves have been

able to obtain pricing information from online pricing applications specifically designed to provide up-to-date rates for particular makes and models of vehicles. This information enabled thieves to target their searches in residential neighborhoods, parking lots, and other locations to steal the most high-value catalytic converters.

### C.  The Conspiracy

6.  From in or about May 2020, and continuing through in or about October 2022, in the State and District of Minnesota and elsewhere, KOTTEN, JOHNSON, MOO, and JENSEN, and others known and unknown to the grand jury, knowingly combined, conspired, confederated, and agreed with each other and others to commit certain offenses against the United States, that is, to transport, transmit, and transfer in interstate and foreign commerce goods, wares, and merchandise, specifically catalytic converters, having a value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud, in violation of Title 18, United States Code, Section 2314.

7.  The purpose of the conspiracy was to transport stolen catalytic converters from Minnesota and elsewhere across interstate lines in order to enrich the conspirators.

8.  In total, between May 2020 and October 2022, the conspiracy yielded approximately $21 million in payments to KOTTEN, JOHNSON, and others known and unknown to the grand jury, approximately $19 million of which came from a small number of high-volume buyers based in New Jersey, Oklahoma, Colorado, and New York.

3

**D.    The Manner and Means of the Conspiracy**

9.    The manner and means by which defendants KOTTEN, JOHNSON, MOO, and JENSEN, along with other uncharged co-conspirators, sought to accomplish the objects of the conspiracy included, among others, the following:

10.    In order to have stolen catalytic converters to sell and to transport to out-of-state buyers, KOTTEN, JOHNSON, and their co-conspirators had to first collect, store, and sort inventory of stolen catalytic converters within the State and District of Minnesota. This occurred on a frequent (sometimes weekly or even daily) basis throughout the conspiracy, and was often coordinated through phone calls, text messages, or communications through social media between the co-conspirators and others regarding where and when stolen catalytic converter pick-ups or deliveries would occur.

11.    At times relevant to the conspiracy, street-level cutters stole catalytic converters from vehicles throughout the State and District of Minnesota, primarily using reciprocating saws or similar handheld power tools. After stealing the catalytic converters, street-level cutters transferred the stolen catalytic converters either directly to KOTTEN or JOHNSON, or, on some occasions, to intermediary buyers working on behalf of KOTTEN and JOHNSON, including JENSEN and MOO.

12.    Generally, the street-level cutters providing stolen catalytic converters to KOTTEN, JOHNSON, and their co-conspirators did not want to hold on to stolen catalytic converters for long, both because of the risk of getting caught with stolen goods, and because they were eager to convert the stolen catalytic converters into fast cash.

13.     On some occasions, KOTTEN and JOHNSON met with cutters directly and bought catalytic converters they knew to be stolen.

14.     On other occasions when KOTTEN or JOHNSON were unavailable to meet a street-level cutter on short notice, or preferred to pick up a larger load at once rather than smaller loads, they instructed cutters to transfer the catalytic converters to intermediary buyers acting on their behalf, such as JENSEN, MOO, and others.

15.     MOO, a/k/a "Jackson," acted as a regular intermediary for KOTTEN and JOHNSON and was a point of contact for many street-level cutters in and around St. Paul, Minnesota. MOO allowed cutters to bring their stolen catalytic converters to his residence, or arranged for multiple cutters to convene at his residence with their respective stolen catalytic converters, so that KOTTEN, JOHNSON, JENSEN, or others could retrieve a load.

16.     After receiving stolen catalytic converters from cutters or co-conspirators, members of the conspiracy concealed and stored the inventory in preparation for shipment across state lines. This process included sorting, categorizing, and pricing out what was in the anticipated loads. On some occasions, KOTTEN, JOHNSON, and others sent the out-of-state purchasers manifests or logs detailing the contents of anticipated shipments, and exchanged electronic communications to confirm the contents and value of the stolen catalytic converter shipments.

17.     The conspiracy used various real properties associated with KOTTEN, JOHNSON, MOO, and others to store and sort inventory between out-of-state shipments, including KOTTEN's residence in Hutchinson, Minnesota, JOHNSON's residence in Saint

5

Paul, Minnesota, MOO's residence in Saint Paul, Minnesota, and several commercial properties owned or controlled by KOTTEN and JOHNSON.

18.     KOTTEN, JOHNSON, and other uncharged co-conspirators transported the stolen catalytic converters across state lines in several ways, including using rented U-Haul trailers and personal vehicles. Often, one or both legs of the trip included one or more co-conspirators traveling to or from the out-of-state purchaser's destination by airplane.

19.     Payments for the stolen catalytic converters were typically in the form of wire transfer, cash, check, or a combination thereof. On some occasions, an out-of-state purchaser receiving a shipment paid one co-conspirator, who then paid other co-conspirators their share for a shipment.

20.     In order to conceal their scheme, KOTTEN and others purchased scrap or junk cars from individual sellers or at auction to make it appear as though they were involved in a legitimate automotive scrapping and recycling business. The purpose of such lawful purchases of vehicles made throughout the course of the conspiracy was to protect the conspiracy from detection: if the co-conspirators had legitimate titles or bills of sale in their possession, and created the impression of a legitimate scrapping and recycling business, they would have an easier time explaining their cash income and their possession of catalytic converters in the event they were audited or investigated.

21.     Although many of the shipments of catalytic converters originated within the State and District of Minnesota and were transported to purchasers located out of state, the conspiracy also involved transporting stolen catalytic converters from out-of-state across state lines and into the State and District of Minnesota, either to sell to Minnesota-based

recyclers, or to add to loads of catalytic converters destined for other out-of-state shipments. Thus, while a trip to New Jersey or to Oklahoma was typically a trip to transport and sell stolen catalytic converters, those trips also, on occasion, included transporting stolen catalytic converters back to Minnesota.

### E.   Overt Acts in Furtherance of the Conspiracy

22.     In furtherance of the conspiracy, and to accomplish its objects and purposes, at least one of the conspirators committed, or caused to be committed, in the State and District of Minnesota and elsewhere, on or about the dates indicated, the following overt acts, among others:

**Overt Acts in January 2021:**

23.     Between on or about January 10 and January 14, 2021, JOHNSON, or his father acting on his behalf, rented a U-Haul trailer in JOHNSON's father's name.

24.     KOTTEN and JOHNSON used the U-Haul trailer to transport stolen catalytic converters across state lines to a New Jersey purchaser.

25.     The New Jersey purchaser paid JOHNSON approximately $241,684 and KOTTEN approximately $258,316 for the shipment.

26.     On or around January 14, 2020, KOTTEN and JOHNSON flew back from New Jersey to Minnesota.

27.     Between on or about January 26 and January 29, 2021, JOHNSON, or his father acting on his behalf, rented a U-Haul trailer in JOHNSON's father's name.

28.     KOTTEN used the U-Haul trailer to transport stolen catalytic converters across state lines to a New Jersey purchaser.

7

United States v. KOTTEN et al.

29.     The New Jersey purchaser paid KOTTEN approximately $489,197.00 for the shipment.

30.     On or about January 29, 2021, KOTTEN flew back from New Jersey to Minnesota.

**Overt Acts in February, March, and April 2021:**

31.     Between on or between March 3 and March 30, 2021, KOTTEN purchased at least 380 stolen catalytic converters directly from MOO for approximately $248,537.

32.     Between on or about February 24 and March 6, 2021, KOTTEN rented a U-Haul trailer to transport stolen catalytic converters.

33.     KOTTEN used the U-Haul trailer to transport stolen catalytic converters across state lines to a New Jersey purchaser.

34.     The New Jersey purchaser paid KOTTEN approximately $498,000 for the shipment.

35.     On or around March 6, 2021, KOTTEN flew back from New Jersey to Minnesota.

36.     Between on or about March 31 and April 3, 2021, KOTTEN rented a U-Haul trailer to transport stolen catalytic converters.

37.     KOTTEN used the U-Haul trailer to transport stolen catalytic converters across state lines to a New Jersey purchaser.

38.     The New Jersey purchaser paid KOTTEN approximately $347,190 for the shipment.

39.     On or about April 2, 2021, KOTTEN flew back from New Jersey to Minneapolis.

**Overt Acts in October and November 2021:**

40.     On or around October 25, 2021, KOTTEN purchased what he believed to be stolen catalytic converters in a controlled sale and paid $2,900 in cash for the catalytic converters.

41.     On or around November 14, 2021, JENSEN, working on behalf of KOTTEN and JOHNSON, transported a stolen catalytic converter with an Apple AirTag inside it to JOHNSON's residence where JOHNSON stored it.

42.     During that time frame, JOHNSON communicated with a buyer in New York who made repeat purchases from JOHNSON and KOTTEN during the course of the conspiracy.

43.     JOHNSON and KOTTEN caused the New York buyer to travel to Minnesota on or about November 16, 2021 to pick up a shipment of stolen catalytic converters from JOHNSON and KOTTEN. The shipment included the stolen catalytic converter equipped with an Apple AirTag. JOHNSON picked up the New York buyer at the airport.

44.     The New York buyer transported the shipment to the buyer's location in New York, and on or around November 26, 2021, the New York buyer paid KOTTEN $424,943.00.

45.     On or about November 17, 2021, KOTTEN communicated with an individual regarding a potential purchase of what KOTTEN believed to be stolen catalytic converters. KOTTEN told the individual he had been up late selling approximately 2,000

catalytic converters to someone from New York. As they discussed a potential sale, KOTTEN directed the cooperator to meet with JENSEN on KOTTEN's behalf.

46.     JENSEN met with the individual and paid him approximately $3,000 in cash for the catalytic converters.

47.     On or about December 6, 2021, JENSEN, acting on KOTTEN's behalf, again purchased catalytic converters he believed to be stolen from an individual in a controlled sale, and paid $2,500 in cash for the catalytic converters.

**Overt Acts in April 2022:**

48.     On or about April 3, 2022, JOHNSON purchased a stolen catalytic converter from a cutter. In Facebook communications in which that cutter complained about the price JOHNSON had paid, JOHNSON wrote, "…Take it to the scrapyard if you want to be more fair, oh wait that's right they won't buy it…you can't take them to the scrapyard because you stole it from somebody's vehicle…" In another text message within the same thread, JOHNSON wrote, "This is the black market, this ain't Walmart."

49.     On or about April 6, 2022, MOO and KOTTEN exchanged text messages discussing an offer by MOO to sell KOTTEN $25,000 to $30,000 worth of stolen catalytic converters. KOTTEN sent a text indicating that JENSEN would get them on KOTTEN's behalf.

50.     Between on or about April 8 and April 10, 2022, JENSEN and MOO exchanged text messages coordinating to meet.

United States v. KOTTEN et al.

51.     On or about April 25, 2022, KOTTEN again purchased what he believed to be stolen catalytic converters in a controlled sale. On this occasion, KOTTEN paid $4,700 for the catalytic converters.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2–9
### (Interstate Transportation of Stolen Property)
### (KOTTEN and JOHNSON)

52.     Paragraphs 1 through 51 are incorporated herein by reference.

53.     Defendants KOTTEN, JOHNSON, and other uncharged co-conspirators, on or about the dates set forth below as to each count, in the State and District of Minnesota, transported, transmitted, and transferred in interstate commerce goods, wares, and merchandise of the value of $5,000 or more, that is catalytic converters, knowing the same to have been stolen,

| Count | Date of Transport (on or about) | Approximate Value of Goods | Defendants Charged |
|-------|--------------------------------|----------------------------|--------------------|
| 2 | September 12, 2020 through September 17, 2020 | $104,000 | KOTTEN and JOHNSON |
| 3 | October 28 through October 29, 2020 | $602,000 | KOTTEN and JOHNSON |
| 4 | January 13 through January 14, 2021 | $679,294 | KOTTEN and JOHNSON |
| 5 | May 10, 2021 through May 18, 2021 | $525,000 | KOTTEN and JOHNSON |
| 6 | April 13, 2022 through April 20, 2022 | $157,985 | KOTTEN |
| 7 | September 3, 2022 through September 7, 2022 | $86,260 | KOTTEN |
| 8 | October 4, 2022 | $252,420 | JOHNSON |
| 9 | October 21, 2022 | $135,675 | JOHNSON |

All in violation of Title 18, United States Code, Section 2314.

## COUNT 10
### (Conspiracy To Commit Money Laundering)
### (KOTTEN and JOHNSON)

54.     Paragraphs 1 through 53 are incorporated herein by reference.

55.     From in or about May 2020, and continuing through in or about October 2022, in the State and District of Minnesota and elsewhere, Defendants KOTTEN and JOHNSON knowingly conspired, confederated, and agreed with each other and others known and unknown to the grand jury to commit money laundering offenses in violation of Title 18, United States Code, Section 1956, specifically:

      a.     to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, namely, the interstate transportation of stolen property having a value of greater than $5,000, in violation of Title 18, United States Code, Section 2314, with the intent to promote the carrying on of specified unlawful activity, namely, the interstate transportation of stolen property having a value of greater than $5,000, in violation of Title 18, United States Code, Section 2314, and knowing, while conducting and attempting to conduct such financial transactions, that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

      b.     to knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, which property had

derived from specified unlawful activity, namely, the interstate transportation of stolen property having a value of greater than $5,000, in violation of Title 18, United States Code, Section 2314, in violation of Title 18, United States Code, Section 1957.

### The Manner and Means of the Conspiracy

56.    KOTTEN, JOHNSON, and others knowingly transported in interstate commerce catalytic converters that had a value exceeding $5,000 and that they knew to be stolen, in violation of Title 18, United States Code, Section 2314, and sold those catalytic converters transported in interstate commerce for profit.

57.    KOTTEN, JOHNSON, and others continuously used the proceeds from their past interstate transportation of stolen catalytic converters to purchase additional catalytic converters that KOTTEN and JOHNSON then knew to be stolen and that they also intended to transport in interstate commerce and sell.

58.    KOTTEN, JOHNSON, and others knowingly purchased additional stolen catalytic converters—using proceeds that they had obtained from their prior interstate transportation and sale of other stolen catalytic converters that they knew to be stolen— and thereby promoted the carrying on of their interstate transportation of such additional catalytic converters that they knew to be stolen, in violation of Title 18, United States Code, Section 2314.

59.    Also as a part of the money laundering conspiracy:

a.    KOTTEN and others known to the grand jury incorporated various entities, including KOTTEN'S CORES & CATALYTIC CONVERTERS, LLC, PMR TRUST, and PEAK ENTERPRISE, INC.;

b.    KOTTEN, JOHNSON, and others known to the grand jury established multiple bank accounts, including accounts in their own names and in the names of the above corporate entities;

c.    KOTTEN, JOHNSON, and others deposited, and caused to be deposited into those bank accounts, the proceeds of their prior interstate transportation and sale of catalytic converters that had a value of greater than $5,000 and that they then knew to have been stolen, in violation of Title 18, United States Code, Section 2314;

d.    KOTTEN and JOHNSON withdrew as cash, and caused to be withdrawn as cash from those bank accounts, the proceeds of their prior interstate transportation and sale of catalytic converters that had a value of greater than $5,000 and that they then knew to have been stolen, in violation of Title 18, United States Code, Section 2314;

e.    KOTTEN, JOHNSON, and others used cash, traceable to proceeds of their prior interstate transportation and sale of catalytic converters that had a value of greater than $5,000 and that they then knew to have been stolen, in violation of Title 18, United States Code, Section 2314, to buy from street-level cutters and others additional stolen catalytic converters that KOTTEN and JOHNSON then

knew to have been stolen and that they intended to transport in interstate commerce and sell in shipments having a value of greater than $5,000, contrary to Title 18, United States Code, Section 2314; and

    f.    Specifically, between in and around May 2020 through in and around October 2022, KOTTEN and JOHNSON, and others knowingly engaged in numerous monetary transactions that they then knew to involve criminally derived property and which monetary transactions occurred by, through, and to a financial institution, and which monetary transactions affected interstate and foreign commerce and in fact involved property of a value greater than $10,000 that had been derived from a specified unlawful activity, namely, violations of Title 18, United States Code, Section 2314, Interstate Transportation of Stolen Property, including, but not limited to: cash withdrawals in excess of $10,000.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 11–20
### (Monetary Transactions with Proceeds of Specified Unlawful Activity)
### (KOTTEN and JOHNSON)

60.    Paragraphs 1 through 59 are incorporated herein by reference.

61.    Defendants KOTTEN and JOHNSON, on or about the dates set forth below as to each count, in the State and District of Minnesota, did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is violations of Title 18, United States Code, Section 2314, Interstate Transportation of Stolen

United States v. KOTTEN et al.

Property, knowing that the property involved in the financial transactions was derived from

some form of criminal activity:

| Count | Date (On or about) | Description of Financial Transaction | Defendant(s) |
|---|---|---|---|
| 11 | April 28, 2021 | Payment of $21,500 from an account at Saint Paul Federal Credit Union to purchase a 2016 forklift | KOTTEN |
| 12 | May 24, 2021 | Payment of $130,000 from an account at Saint Paul Federal Credit Union to purchase a 2005 Show Hauler | KOTTEN |
| 13 | July 15, 2021 | Payment of $365,174.38 from an account at Saint Paul Federal Credit Union to purchase real property located on Highway 212 in Montevideo, Minnesota | KOTTEN |
| 14 | November 5, 2021 | Payment of $13,148.48 from an account at Wells Fargo Bank to purchase a Gradall Excavator | KOTTEN |
| 15 | November 29, 2021 | Payment of $25,000 from an account at Wells Fargo Bank to purchase real property located on 47th Street SW in Montevideo, Minnesota | KOTTEN |
| 16 | January 5, 2022 | Payment of $42,542.18 from a CorTrust bank account to purchase a vehicle in the amount of $42,542.18 | KOTTEN |
| 17 | March 12, 2021 | Payment of $22,000 from a Topline Financial Credit Union account to Robinhood Investments | JOHNSON |
| 18 | May 6, 2021 | Payment of $25,000 from a Topline Financial Credit Union account to Robinhood Investments | JOHNSON |
| 19 | July 13, 2021 | Deposit of $50,000 cash and purchase of an official check in that amount from Topline Financial Credit Union towards the purchase of real property on Como Boulevard in Saint Paul, Minnesota. | JOHNSON |
| 20 | July 28, 2021 | Deposit of $100,000 cash and purchase of an official check from Topline Financial Credit Union in that amount towards the purchase of real property | JOHNSON |

| | | located on Laurel Avenue in Saint Paul, Minnesota | |
|---|---|---|---|

All in violation of Title 18, United States Code, Section 1957.

## COUNT 21
### (Conspiracy To Commit Money Laundering – Concealment)
### (JOHNSON)

62.     Paragraphs 1 through 61 are incorporated herein by reference.

63.     Between in or around January 2021, and continuing through in or about July 2023, in the State and District of Minnesota and elsewhere, Defendant JOHNSON knowingly conspired with others known and unknown to the grand jury to commit money laundering offenses against the United States in violation of Title 18, United States Code, Section 1956, specifically: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, namely, the interstate transportation of stolen property having a value of greater than $5,000, in violation of Title 18, United States Code, Section 2314, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing, while conducting and attempting to conduct such financial transactions, that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### The Manner and Means of the Conspiracy

64.     Before JOHNSON became involved in the interstate transportation of stolen catalytic converters, he did not own a home, and he did not have significant income.

Throughout 2020 and into 2021, JOHNSON, like his other co-conspirators involved in the stolen catalytic converter transportation scheme, earned a significant amount of criminal proceeds from transporting stolen catalytic converters in interstate commerce and conspiring to do so.

65.    JOHNSON knew that simply storing large sums of cash risked seizure by law enforcement and he also knew that if he deposited such large sums of money into his own bank account, it would arouse suspicion and risk discovery of his unlawful activities and seizure of his unlawful earnings.

66.    Accordingly, to conceal the nature, source, ownership, and control of the proceeds he had obtained from the interstate transportation of stolen catalytic converters, in violation of Title 18, United States Code, Section 2314, JOHNSON conspired to engage in, and engaged in, a series of transactions by which he concealed those criminal proceeds.

67.    On several occasions, JOHNSON directed the out-of-state purchasers who owed him money for stolen catalytic converter shipments to make payments to his father, his grandmother, and/or to a title company responsible for closing on a real estate sale, in order to conceal or disguise the payments.

68.    On other occasions, JOHNSON attempted to conceal or disguise the proceeds through vehicle or equipment purchases and subsequent sales or trade-ins.

69.    On other occasions, JOHNSON, and others acting on his behalf, provided other persons (such as family members, neighbors, or other acquaintances) with cash proceeds of the interstate transportation of stolen catalytic converters, and instructed those individuals to deposit that cash in their own bank accounts and then issue checks towards

real estate, vehicle, or equipment purchases. On some of those occasions, the individuals were instructed to falsely characterize their cashier's checks as "gifts."

70. As an additional manner and means of the conspiracy to conceal and disguise the source or control of criminal proceeds, in or around January 2023, JOHNSON transferred title of two properties that he had purchased in 2021 (namely, property located on Como Boulevard in Saint Paul purchased for $160,000 in cash on or about July 30, 2021; and a residence located on Laurel Avenue in Saint Paul, Minnesota purchased for $630,000 in cash on or about August 16, 2021) to be titled in his grandmother's name, for less than $500.00 in consideration each.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 22
### (Possession of a Machinegun)
### (MOO)

79. On or about August 17, 2022, in the State and District of Minnesota, MOO met with an individual known to the grand jury to exchange stolen catalytic converters for several firearms, including AR-15-style rifles and a gun with a machinegun conversion device, also known as a "switch" or "auto sear."

80. MOO presented the individual with a black and gray Polymer80 9mm handgun. MOO said that the gun was his personal handgun, and that it was a "ghost gun," meaning that it did not bear any unique identifiers. The handgun was equipped with an auto sear. When asked, MOO confirmed that the auto sear converted the handgun to a fully automatic weapon by a single function of the trigger.

United States v. KOTTEN et al.

82.    MOO knew that the Polymer80 handgun with the attached auto sear had characteristics that made it a machinegun as defined by Title 26, United States Code, Section 5845(b),

83.    MOO also provided the individual with two AR-15-style rifles, a suppressor, and a laser sight. After MOO provided the known individual with these firearms, MOO moved the stolen catalytic converters from the known individual's vehicle to MOO's own truck.

All in violation of Title 18, United States Code, Sections 922(o)(1) and 924(a)(2).

## FORFEITURE ALLEGATIONS

Upon conviction of any of the offenses alleged in Counts 1 through 9 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 2314.

Upon conviction of any of the offenses alleged in Counts 10 through 21 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

The property subject to forfeiture upon conviction of any of Counts 1-21 includes, but is not limited to, the following:

1. 354 catalytic converters seized from 11257 North Sunset Drive, Hutchinson, MN on November 2, 2022;

2. 18 catalytic converters seized from 3rd Avenue NE, Sleepy Eye, MN on November 2, 2022;

3. 189 catalytic converters seized from 1397 Laurel Avenue, St. Paul, MN on November 2, 2022;

4. 2 catalytic converters seized from 1460 Kent St., St. Paul, MN on November 2, 2022;

5. 113 catalytic converters seized from 28999 County Road 27, Sleepy Eye, MN on November 2, 2022;

6. A 2015 Harley-Davidson FLHXSE motorcycle with VIN 1HD1PXN12FB963469;

7. A 2022 Midsota Flatbed 24' trailer with VIN 5JWBT2424NA100119;

8. $83,753 U.S. Currency seized from 11257 N. Sunset Drive, Hutchinson, MN on November 2, 2022;

9. One Ellis Manufacturing Company, Inc., Model RA-GR838 band saw, serial number 1059;

10. One Ellis Manufacturing Company, Inc., Model 9400 drill press, serial number 94D221166;

11. One Superior Safe Company, Model Master 40A safe, serial number SM40A050421-01 2540100110;

12. A 2011 Dodge Ram 5500 with gooseneck with VIN 3D6WU7CLXBG515223;

13. A 2013 Dodge Ram 5550 flatbed tow truck with VIN 3C7WRMDL4DG595810;

14. A 2016 Freightliner flatbed tow truck with VIN 1FVACWDT5HHJE5065;

15. A 2015 PJ trailer/gooseneck dump trailer, model DD162 with VIN 4P5DD1626F1232518;

16. A 2016 Linde H45 forklift with VIN H2X394C00649;

17. A Caterpillar 299D2 skid steer serial number CAT0299DKFD202374;

18. $7,606 U.S. Currency seized from 1397 Laurel Avenue, St. Paul, MN on November 2, 2022;

19. $10,885 U.S. Currency seized from 1460 Kent St., St. Paul, MN on November 2, 2022;

20. Safe Lite Defense, model SLD-IIIA, body armor, serial number 43-5327;

21. $4,325 U.S. Currency seized from 28999 County Road 27, Sleepy Eye, MN on November 2, 2022;

22. A 2005 Freightliner Show Hauler Motor Coach RV with VIN 1FVHA6CV45LN05821;

23. A 2015 Load Max gooseneck trailer with VIN 4ZEGH4020F1081435;

24. $15,246 U.S. Currency seized from 28999 County Road 27, Sleepy Eye, MN on November 2, 2022;

25. $175,408 seized from Old National Bank account number 127548041 on November 7, 2022;

26. $1,626.40 seized from Topline Financial Credit Union account number 8105938552 on November 2, 2022;

27. A 2004 Lamborghini Gallardo with VIN ZHWGU11S24LA01075;

28. A 2015 Nissan GT-R with VIN JN1AR5EF2FM280559;

29. A 2022 Toyota Sienna with VIN 5TDASKFCXNS045172;

30. $337,800 U.S. Currency seized from Intellex Forensics Advisory Services, Inc. on January 13, 2023;

31. $31,857.77 in funds associated with State Farm check number 105158424;

32. The real property located at 5511 St. Albans St., Shoreview, MN 55126;

33. The real property located at 1397 Laurel Avenue, St. Paul, MN 55104;

34. The real property located at 963 Como Blvd. E., St. Paul, MN 55103;

35. The real property located at 702 W Highway 212, Montevideo, MN 56265;

United States v. KOTTEN et al.

36. The real property located at 3rd Avenue NE, Parcel ID 00296000012125, Sleepy Eye, MN 56085; and

Upon conviction of the offense alleged in Count 22 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), any firearms, ammunition, and accessories involved in or used in the commission of Count 22. The property subject to forfeiture includes, but is not limited to, the following:

1. a black and gray Polymer80 9mm handgun bearing no unique identifiers, equipped with an attached machinegun conversion device, commonly known as a "switch" or "auto sear".

If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY                    FOREPERSON

23