UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.23-320 (1) (ECT/DJF)

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOHN CHARLES KOTTEN,

Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and the defendant, John Charles Kotten, agree to resolve this case on the terms and conditions that follow.  This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government").  This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.      **Charges**.  The defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with Conspiracy to Transport Stolen Goods Interstate, in violation of 18 U.S.C. § 371 and § 2314.  The defendant fully understands the nature and elements of the crime with which he has been charged.

Upon imposition of sentence, if there are remaining counts, the government agrees to move to dismiss those remaining charges against the defendant contained in the Indictment.

1

2.    **Factual Basis**.  The defendant is pleading guilty because he is in fact guilty of Count 1 of the Indictment.  In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

From in or about May 2020, and continuing through in or about October 2022, in the State and District of Minnesota, the defendant knowingly participated in a scheme to transport stolen catalytic converters across state lines, knowing the same to have been stolen.

Specifically, the defendant admits that early in 2020, he realized the labor and overhead burdens of legitimately purchasing and towing whole cars for scrap metal value limited the potential profitability of that venture, in contrast to the profits associated with receiving, transporting, and selling stolen catalytic converters. In the course of the conspiracy, the defendant became acquainted with co-conspirators within the State and District of Minnesota, as well as multiple out-of-state buyers who were willing to purchase large volumes of stolen catalytic converters, including a company in New Jersey known as "DG Auto," a company in New York known as "Superior Auto," a company in Oklahoma known as "Curtis Cores," and a company in Colorado known as "Elevation Auto," among other purchasers.

As part of the conspiracy, the defendant used a mobile app created by "DG Auto" to price catalytic converter makes and models based on their precious metal concentrations, and instructed street-level catalytic converter cutters and thieves which catalytic converters were the most valuable. At times, the defendant received small loads of stolen catalytic converters directly from street-level cutters and thieves. At other times, he collected larger loads of stolen catalytic converters from intermediaries who had received them from street-level cutters and thieves. The defendant generally paid cash for the loads of converters he purchased. Then, when he had sufficient inventory, the defendant would either personally transport loads of stolen catalytic converters across state lines to interstate purchasers, or would arrange for other members of the conspiracy to transport those loads.

In order to conceal their scheme, the defendant and co-conspirators purchased scrap or junk cars from individual sellers or at auction to make it appear as though they were involved in a legitimate automotive scrapping and recycling business. The purpose of such lawful purchases of vehicles made throughout the course of the conspiracy was to protect the conspiracy from detection: if the co-conspirators had legitimate titles or bills of sale in their possession, and created the impression of a legitimate scrapping and recycling business, they would have an easier time explaining their cash income and

their possession of catalytic converters in the event they were audited or investigated.

The defendant agrees that, in furtherance of the conspiracy and to effect its unlawful objectives, he and other co-conspirators committed and caused to be committed the following overt acts, among others:

a.    **U-Haul Rentals to Transport Stolen Goods Interstate.** The defendant and his co-conspirators rented or caused to be rented U-Haul trailers to transport stolen catalytic converters between on or about the dates listed below. On many of these trips, the defendant and his co-conspirators drove the U-Haul trailer out of state together, with one or multiple co-conspirators flying back to Minnesota from their destination after the transaction was complete:

   i.   May 21, 2020 through May 23, 2020;

   ii.  June 22, 2020 through June 23, 2020;

   iii. August 15, 2020 through August 20, 2020;

   iv.  September 12, 2020 and September 17, 2020;

   v.   October 5, 2020 and October 12, 2020;

   vi.  October 26, 2020 and October 30, 2020;

   vii. November 16, 2020 and November 21, 2020;

   viii. December 7, 2020 and December 17, 2020;

   ix.  January 10, 2021 and January 14, 20201;

x.   January 26, 2021 and January 29, 2021;

xi.   February 8, 2021 and February 12, 2021;

xii.   February 24, 2021 and March 6, 2021;

xiii.   March 31, 2021 and April 3, 2021;

xiv.   April 11, 2021 and April 17, 2021;

xv.   April 19, 2021 and April 20, 2021;

xvi.   May 10, 2021 and May 18, 2021;

xvii.   May 20, 2021 and May 23, 2021;

xviii.   July 8, 2021 and July 14, 2021;

xix.   January 6, 2022 and January 8, 2022;

xx.   January 24, 2022 and January 27, 2022;

xxi.   January 30, 2022 and January 31, 2022;

xxii.   February 6, 2022 and February 10, 2022;

xxiii.   February 14, 2022 and February 17, 2022;

xxiv.   March 6, 2022 and March 15, 2022;

xxv.   March 16, 2022 and March 23, 2022;

xxvi.   March 27, 2022 and March 30, 2022;

xxvii.   April 6, 2022 and April 9, 2022;

xxviii.   April 13, 2022 and April 20, 2022;

xxix.   April 19, 2022 and April 24, 2022;

xxx.   April 24, 2022 and April 27, 2022;

xxxi.   April 292, 2022 and April 30, 2022;

xxxii.   May 4, 2022, and May 7, 2022;

xxxiii.   September 3, 2022 and September 7, 2022;

xxxiv.   September 19, 2022 and September 23, 2022.

b.      **Accepting Payment.** The defendant or his co-conspirators accepted payments for each of the loads of catalytic converters listed above in varying amounts based on volume and contents of the load. On some occasions, out-of-state buyers made one payment for the entire load to one of the members of the conspiracy, a portion of which was then paid to the defendant based on the volume of catalytic converters attributable to him in that particular load. On other occasions, the co-conspirators transported a load together and each received direct payment from the out-of-state purchaser for their portion. For instance, in exchange for the combined load transported to New Jersey in or around November 16, 2020 the defendant received $401,456 directly from DG Auto, and his co-conspirator received $358,000 for his portion of the same load. In all, out-of-state purchasers paid over $19,000,000 to the defendant and co-conspirators during the course of the conspiracy.

3.      **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and

6

voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences.** The defendant understands that as a result of this conviction, the defendant could experience additional collateral

consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6.      **Statutory Penalties**.  The defendant understands that Count 1 of the Indictment, charging Conspiracy to Transport Stolen Goods Interstate in violation of 18 U.S.C. § 371 is a felony offense that carries the following statutory penalties:

>    a.      a maximum of five years in prison;
>
>    b.      a supervised release term of at least one up to a maximum supervised release term of three years;
>
>    c.      a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;  and
>
>    d.      a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7.      **Guidelines Calculations**.  The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from

presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence. The parties stipulate to the following guidelines calculations:

    a.    <u>Base Offense Level</u>. The parties agree that the base offense level is **6**. U.S.S.G. § 2B1.1(a)(2).

    b.    <u>Specific Offense Characteristics</u>. The parties agree that the offense level should be increased by **20** levels because the offense involved more than $9,500,000 but less than $25,000,000 in actual or intended pecuniary harms. U.S.S.G. § 2B1.1(a)(2). The parties further agree that the base offense shall be increased by **2** levels because the offense involved ten or more victims. U.S.S.G. § 2B1.1(b)(2). The parties further agree that the offense should be increased by **2** levels because the offense involved an organized scheme to receive stolen car parts. U.S.S.G. § 2B1.1(b)(15). The parties agree that no other specific offense characteristics apply.

    c.    <u>Chapter 3 Adjustments</u>. The parties agree that, other than acceptance of responsibility, no other Chapter 3 adjustments apply.

    d.    <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of the defendant's intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full,

complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

e.    Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I.   U.S.S.G. § 4A1.1.   This does not constitute a stipulation, but a belief based on an assessment of the information currently known.  The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.  The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.    Guidelines Range. If the adjusted offense level is 27, and the criminal history category is I, the Sentencing Guidelines range is **70-87 months of imprisonment**.

However, because the maximum sentence is 60 months of imprisonment, if the adjusted offense level is 27, and the criminal history category is I, the restricted Guidelines range is **60 months of imprisonment**.

g.    Fine Range. If the adjusted offense level is 27, the Sentencing Guidelines fine range is $25,000 to $250,000. U.S.S.G. § 5E1.2(c).

10

> h.    Supervised Release. The Sentencing Guidelines' term of supervised release is 1 to 3 years. U.S.S.G. § 5D1.2.

8.    **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9.    **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and that their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and/or depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

11

10.    **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11.    **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees to pay the special assessment.

12.    **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be

12

necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate the defendant's ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

13.    **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy charged in Count 1 of the indictment.

The defendant agrees that the property subject to forfeiture includes but is not limited to any interest he has, directly or indirectly, in the following property:

a.    354 Catalytic Converters, seized from 11257 N. Sunset Drive, Hutchinson, MN on November 2, 2022;

b.    113 Catalytic Converters, seized from 28999 County Rd 27, Sleepy Eye, MN on November 2, 2022;

c.    18 Catalytic Converters, seized from Parcel number 00296000012125 3rd Ave NE, Sleepy Eye, MN on November 2, 2022;

d.    189 Catalytic Converters, seized from 1397 Laurel Ave, St. Paul, MN 55104 on November 2, 2022;

e.    62 Catalytic Converters seized from 60511 235th Street, Madison Lake, MN on November 2, 2022;

f.    2 Catalytic Converters, seized from 1460 Kent St, St. Paul, MN 55117 on November 2, 2022;

g.    a 2022 Toyota Sienna, VIN: 5TDASKFCXNS045172, seized from 5511 St. Albans Street, Shoreview, MN;

h.    a Red 2012 KIA Sedona, VIN: KNDMH4C76C6421099, seized from 11257 N. Sunset Drive, Hutchinson, MN;

i.    a Black 2015 Harley-Davidson Motorcycle, VIN: 1HD1PXN12FB963469, seized from 11257 N. Sunset Drive, Hutchinson, MN;

j.    a Silver 2011 Dodge Ram 5500 with gooseneck, VIN: 3D6WU7CLXBG515223, seized from Parcel number 00296000012125 3rd Ave NE, Sleepy Eye, MN;

k.    a Red 2013 Dodge Ram 5550 Flatbed Tow Truck, VIN: 3C7WRMDL4DG595810, seized from Parcel number 00296000012125 3rd Ave NE, Sleepy Eye, MN;

l.    a Red 2017 Freightliner Flatbed Tow Truck, VIN: 1FVACWDT5HHJE5065, seized from Parcel number 00296000012125 3rd Ave NE, Sleepy Eye, MN;

m.    a 2015 Nissan GT-R, VIN: JN1AR5EF2FM280559, seized from 1397 Laurel Ave, St. Paul, MN;

n.    a White 2005 Freightliner Show Hauler Motor Coach RV, VIN: 1FVHA6CV45LN05821, seized from 28999 County Rd 27, Sleepy Eye, MN;

o.    a Black 2004 Lamborghini Gallardo, VIN: ZHWGU11S24LA01075, seized from 1220 Virginia St., St. Paul, MN;

14

p.    a Black 2022 Midsota Flatbed 24' Trailer, VIN: 5JWBT2424NA100119, seized from 11257 N. Sunset Drive, Hutchinson, MN;

q.    a Black 2015 PJ Trailer/Gooseneck Dump Trailer, Model DD162, VIN: 4P5DD1626F1232518, seized from Parcel number 00296000012125 3rd Ave NE, Sleepy Eye, MN;

r.    an Orange 2016 Linde H45 Fork Lift, VIN: H2X394C00649, seized from Parcel number 00296000012125 3rd Ave NE, Sleepy Eye, MN;

s.    a Yellow Caterpillar 299D2 Skid Steer, Serial Number: CAT0299DKFD202374, seized from Parcel number 00296000012125 3rd Ave NE, Sleepy Eye, MN;

t.    a Black 2015 Trailerman Trailer, VIN: 5L3EY4426FL000901, seized from 28999 County Rd 27, Sleepy Eye, MN;

u.    a Black 2015 Load Max Gooseneck Trailer, VIN: 4ZEGH020F1081435, seized from 28999 County Rd 27, Sleepy Eye, MN;

v.    Two Car Jacks, seized from 11257 N. Sunset Drive, Hutchinson, MN:
i. a silver NAPA 5 ton Jack, Model 94-227, bearing no serial number; and

ii. a red Hein-Werner 12 Ton Jack, Model C-1588, bearing no serial number;

w.    a Band Saw, Model RA-GR838, serial number 1059, made by Ellis Manufacturing Company, Inc., seized from 11257 N. Sunset Drive, Hutchinson, MN;

x.    a Drill Press, Model 9400, serial number 94D221166, made by Ellis Manufacturing Company, Inc., seized from 11257 N. Sunset Drive, Hutchinson, MN;

15

y.    a Large Safe, Model Master 40A, serial number SM40A050421-01 2540100110 made by Superior Safe Company, seized from 11257 N. Sunset Drive, Hutchinson, MN;

z.    $175,408 in US Currency seized from Old National Bank Account 127548041 on November 7, 2022;

aa.    $39,588.04 in US Currency seized from Robinhood Account 427921770;

bb.    $1,626.40 in US Currency seized from TopLine Financial Credit Union Account 8105938552 on November 2, 2022;

cc.    $337,800 U.S. Currency seized from Intellex Forensics Advisory, Inc. on January 13, 2023;

dd.    $31,857.77 Funds represented in State Farm Check 105158424;

ee.    $7,606 in US Currency, seized from 1397 Laurel Ave, St. Paul, MN on November 2, 2022;

ff.    $83,974 in US Currency, seized from 11257 N. Sunset Drive, Hutchinson, MN on November 2, 2022;

gg.    $13,519 in US Currency, seized from 3619 Snelling Ave, Minneapolis, MN;

hh.    $4,325 in US Currency seized from 28999 County Rd 27, Sleepy Eye, MN on November 2, 2022;

ii.    $15,246 US Currency, seized from 28999 County Rd 27, Sleepy Eye, MN on November 2, 2022;

jj.    $5,749 in US Currency seized from 60511 235th Street, Madison Lake, MN;

kk.    $10,885 in US Currency, seized from 1460 Kent St, St. Paul, MN on November 2, 2022;

16

ll.   a Safe Lite Defense Body Armor, serial number 43-5327, seized from 1460 Kent St, St. Paul, MN;

mm.   Smith & Wesson 9mm Handgun, Serial number JKZ0145 and all ammunition and accessories seized therewith, including, but not limited to 11 rounds of 9mm ammunition, 9 rounds of 7.65mm ammunition, a Smith & Wesson box for handgun, a 9mm magazine, and a 7.65mm magazine, seized from 1460 Kent St, St. Paul, MN 55117;

nn.   The real property located at 5511 St. Albans St. Shoreview, MN 55126;

oo.   The real property located at 1397 Laurel Avenue, St. Paul, MN 55104;

pp.   The real property located at 963 Como Blvd. E. St. Paul, MN 55103;

qq.    The real property located at 702 W. Highway 212, Montevideo, MN 56265;

rr.   The real property located at 3rd Avenue NE, Parcel ID 00296000012125, Sleepy Eye, MN 56085;

ss.   2022 Case TV450B Compact Track Loader with High Flow Plus, S/N: NMM407430;

tt.   Berlon 102" Hi-Cap Snow Bucket Unit 409474;

uu.   Berlon Pallet Fork Assembly with 60x10K Tines Unit 409473;

vv.   Bradco 78" Construction Brush Grapple Unit 406211; and

ww.   a Toyota Forklift 2014 Toyota Forklift, Model 8FD450, Serial Number 10262.

The defendant agrees that this property is subject to forfeiture because it constitutes or is traceable to the proceeds of the conspiracy to transport stolen property interstate charged in Count 1 of the Indictment. The defendant further agrees to cooperate with the government with respect to the seizure of items "ss-ww" above, to the extent that those items are not in custody of the United States.

The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets for other assets the defendant owned or controlled, and to forfeit additional directly forfeitable property.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest the defendant may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. To the extent the defendant has sought remission or otherwise challenged the forfeiture of the above-described property, the defendant withdraws any such challenges.

14. **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal

waiver includes but is not limited to the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty.

The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above 60 months' imprisonment.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

19

The United States agrees to waive its right to appeal any sentence except the government may appeal the substantive reasonableness of a term of imprisonment below 60 months' imprisonment.

15. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

16. **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

ANDREW M. LUGER
United States Attorney

Date: _12 - 10 - 24_

BY: _____
Lindsey E. Middlecamp
Emily Polachek
Assistant United States Attorney

Date: _12-10-24_

_____
John Charles Kotten
Defendant

Date: _12/10/24_

_____
Joe Tamburino
Counsel for Mr. Kotten

21